SKOWHEGAN WATER POWER COMPANY, and others, in equity,

*vs.*

LEVI W. WESTON, and others.

Somerset.    Opinion July 10, 1900.

*Waters.    Deeds.    Reservations.    Equity.*

Where there are two or more natural channels in a river, the respective rights of the riparian owners upon each of such channels, independent of grant, contract, statute or prescription, are well settled. The riparian owners upon each of such channels are entitled to have flow through their respective channels so much of the water of the river as would naturally flow there, and no more. The owners upon one channel can not lawfully, by widening or deepening their channel or by other means, cause a greater proportion of the water to flow through such channel than otherwise would. But if the natural flow through one channel is checked by dams or otherwise, and the flow of water through another channel is thereby increased, the riparian owners upon such other channel can lawfully make use of this extra flow. They can lawfully use all the water that nature or the acts of other parties send to them.

The Kennebec River at Skowhegan is divided into two channels by an island known as Skowhegan Island, and the island itself is again divided by a third channel which extends across the island near its north end, in a northeasterly direction, and substantially at right angles with the general course of the other two channels. These three channels are known as the northern, southern and middle channels.

The defendants are the owners of the northern part of this island, including that portion through which the water of the middle channel flows, together with the land upon both sides thereof, having acquired title thereto, by mesne conveyances, under an original deed in which the land conveyed, the north portion of the island, was described by metes and bounds.

*Held;* that the defendants acquired under this deed, excluding from consideration for the moment certain reservations therein, the ordinary rights of riparian owners; that such rights were acquired by them by becoming the owners of the soil through which the water flowed; that the grant was not a water right, nor of land with specified water rights, but of land with such water rights as go with the soil.

In this original deed, the grantor, who was the owner of substantially the whole of the island together with a tract of land upon the south shore of the southern channel, opposite the southeastern portion of the island, made various reservations for himself, his heirs and assigns, the important portions of which are as follows: The right " at all times to enjoy the free and unobstructed use of the water which shall run or be turned into the southern channel of Kennebec River at said island." Also, "the right to erect and maintain a dam or dams upon the channel or sluiceway in which said Weston's mills stand, (the middle channel) in order to save the water for the use of the mills upon the said southern channel, whenever the said Weston, his heirs or assigns, shall cease or omit to maintain dams sufficient for that purpose." Also, " the right to join a dam which may hereafter be erected to the north part of said island, and the same to repair, rebuild and maintain forever." Other reservations contained in the deed are not important in the determination of the questions involved. The defendants have acquired their title under this deed and their rights and privileges are subject to the reservations therein contained. The complainants claimed to have acquired all the rights and privileges reserved by the grantor in his deed to himself and his heirs and assigns.

*Held;* that the language used in the first reservation, "the free and unobstructed use of the water which shall run or be turned into the southern channel" means and is equivalent to, "the natural flow of the water that may run or be turned " into that channel: That by virtue of this reservation, those claiming under that deed are deprived of certain rights which as upper riparian owners upon the southern channel they would otherwise have had. But that there is nothing in the first reservation which deprives the owners of the middle channel of the use of all the water that naturally flows through, or is turned into their channel by dams upon, the other channels:

That the object and intent of the second reservation was to prevent the waste of water through the middle channel, not its use; that it does not prevent, and was not intended to prevent, the use by those claiming under that deed of any water that might be used in its flow through this channel, so long as the capacity of that channel is not improperly increased; and that the plaintiffs are not entitled to the relief prayed for, that the defendants may be restrained from interfering to prevent the erection by the plaintiffs of a dam across this

middle channel, because it is not claimed that any water is wasted through this channel or that the dams of the owners are insufficient to prevent such waste:

That the allegation in the bill that the defendants "by using new, larger and additional water wheels, are about to increase greatly the amount of water used therein beyond what they are entitled to, and thereby deprive the plaintiffs of a large portion of the water which they are entitled to have flow through said middle channel," does not entitle the plaintiffs to the relief prayed for, because the defendants, having the ordinary rights of riparian owners, subject only to the limitation mentioned in the second reservation, have the right to use any of the water that may naturally flow, or be caused by the acts of others to flow, through this channel, and to obtain the most advantageous use of this water for the development of power, they may employ the most improved water wheels and mechanical devices:

But that the allegation that the defendants were contemplating increasing the flow of water through the middle channel "by enlarging and deepening said sluiceway," to the injury of the complainant, states a cause of equitable relief:

That the truth of this allegation is sufficiently shown by the following admission made by the defendants at the hearing, in connection with the testimony that was being introduced as to excavations that had been made and as to the effect of such excavations in causing an increased flow of water: "It is admitted that what has been done by the defendants and what they propose to do, did have the effect and would have the effect to increase the flow of water in that channel beyond prior conditions:"

That the defendant cannot lawfully do this as against the owners upon either of the other channels, who would thereby be deprived of the flow through their channel of the quantity of water they were entitled to. And that as to this ground of relief, it makes no difference whether or not these complainants have succeeded to any of the rights and privileges reserved in the deed above referred to, so long as they are owners upon either of the other channels and entitled to the ordinary riparian rights of such owners: That the acts contemplated by the defendants in this respect should be restrained by injunction:

That another prayer of the bill, asking the court to determine the quantity of water which the defendants are entitled to have flow through the middle channel, and to apportion between the parties the quantity of water which they are entitled to have flow through their respective channels, can not be granted, such an apportionment having been already made by nature, except to the extent that the defendants have already increased the capacity of the middle channel by excavations, as shown by the admission above referred to:

That on account of this fact it will be necessary for the tribunal, which the parties have agreed upon, to determine the amount of such increased flow of water through this channel as has already been accomplished, and the method of preventing in the future the use by the owners of the middle channel of

this increased amount of water, which should be restrained by injunction, as well as to determine the terms, in other respects of the permanent injunction to be granted in accordance with the opinion.

ON REPORT.

Bill in equity, in which the plaintiffs allege, in substance, that they are the owners of the water power in the northern and southern channels of the Kennebec river, at Skowhegan; that the defendants' rights come wholly from the deed of James Bridge and are subject to its reservations; that they hold title under James Bridge to the benefit of those reservations, principally to all the water running in the southern channel and the right to erect a dam in the middle channel to preserve that right; that the defendants have the right to use only such quantity of water as was needed in running the mills in the middle channel in 1806, at the date of the Bridge deed; that the defendants are about to unlawfully enlarge the middle channel and use an unlawful amount of water; that such use would cause the plaintiffs irreparable injury. Wherefore, to prevent a multiplicity of suits they pray for a determination of the respective water rights of all the parties, an equitable apportionment of the water at all stages, a complete adjustment of all their respective rights, an injunction to prevent unlawful use and to restrain defendants from preventing the erection of a dam on the middle channel by the plaintiffs to preserve the water belonging to the southern channel and to prevent the contemplated deepening of the middle channel.

The answer, in substance, alleged that the southern channel begins below the inlet of the middle channel. It was admitted that defendants hold their title under and subject to the reservations of the Bridge deed. The title of the plaintiffs to claim under those reservations was denied. Denial was made of the alleged right to now erect a dam in the middle channel. It was asserted that defendants have a right to use all of the water that comes into their channel. It was denied that the channel is about to be unlawfully enlarged. Other facts and positions asserted in the bill and answer appear in the opinion of the court.

The case is stated in the opinion.

*J. W. Symonds, D. W. Snow, C. S. Cook and H. L. Hutchinson; L. C. Cornish; A. K. Butler; and E. N. Merrill,* for plaintiffs.

*H. M. Heath and C. L. Andrews; S. J. and L. L. Walton; E. F. Danforth and S. W. Gould; Forrest Goodwin; and Turner Buswell,* with them, for defendants.

*Mr. Heath* submitted an elaborate argument on the merits, and *Messrs. Walton & Walton* filed a brief on the questions of title.

SITTING: WISWELL, C. J., HASKELL, STROUT, SAVAGE, FOGLER, JJ.

WISWELL, C. J.   The Kennebec River at Skowhegan is divided into two channels by an island known as Skowhegan Island, and the island itself is again divided by a third channel which extends across the island near its north end, in a northeasterly direction, and substantially at right angles with the general course of the other two channels.   These three channels are known and will be spoken of herein, as the northern, southern and middle channels. All of these channels are capable of producing, and at the present time are used for the production of, water-power of considerable value and extent.   The situation is such that the water which flows through either of these channels is not, and perhaps can not be, used for the production of power in either of the others.

The original complainants allege that they are the owners of the mills and privileges on the southern channel; the Skowhegan Pulp Company, admitted as a party plaintiff upon its own motion subsequent to the filing of the bill, is the owner of a power and privilege on the north channel; certain of the defendants are the owners of the middle channel and of the land upon both sides thereof; other defendants were made parties for reasons not necessary to be stated here.

The purposes of the bill are to obtain an apportionment of the flow of water which these respective riparian owners are entitled to, and also to restrain the defendants from increasing the capacity of the middle channel by blasting, making excavations and otherwise.

The hearing below proceeded for a while upon the idea that a final decree would be made by the sitting justice, but after a great amount of testimony had been introduced, it was deemed advisable, and the parties accordingly agreed, to report the case to the law court, for this court to settle the respective rights of the parties. It was also agreed that if the bill should be sustained, a further hearing should be had before a tribunal constituted by agreement of the parties, to determine all of the details of a final decree, in accordance with the opinion of the court.

In view of the stipulation of the parties, it will not be necessary for the court at this time to consider any controverted questions of fact involved, because there are sufficient facts admitted or undisputed to enable the court to settle the rules of law applicable to the contentions of the parties, and to determine the respective rights of the parties according to their contentions. Nor will it be necessary in this opinion to consider the title of the complainants, about which there is some controversy and in relation to which a great number of deeds have been introduced in evidence, as it is probable that our conclusions will render the dispute as to title unimportant. For the purposes of this opinion we will assume that the ownership of the complainants is as alleged in their bill. If at the subsequent hearing there should still be a controversy in this respect, or if it should appear at that time that there are others who should be made parties, these questions can then be determined, and amendments allowed and made as may be necessary before the final decree.

Independent of grant, contract, statute or prescription, the rights of these respective riparian owners are well settled in accordance with the elementary principles which were very concisely and clearly stated in *Warren* v. *Westbrook Mfg. Co.*, 86 Maine, 32. The riparian owners upon each of these channels are entitled to have flow through their respective channels, "so much of the water of the river as would naturally flow there and no more." "As between the channels, neither party can lawfully do anything by sheer dam, or by widening or deepening his channel, or by any other means, to cause a greater proportion of the water to flow

through his channel." "At the same time, if either party checks the natural flow through his own channel by dams, closed gates or otherwise, and thereby increases beyond nature the flow of water through the other channel, the other party on that other channel can lawfully make use of such extra flow. He can lawfully use all the water that nature or other parties send to him."

At the present time there is a dam upon each of these three channels, and thereby the water of the whole river is to some extent held back and accumulated for the purpose of obtaining a greater head. These riparian owners upon each channel, still considering only their rights as such, have the right to use so much of the accumulated water as would naturally flow through such channel, but the owners of one channel can not increase the capacity of their channel by enlarging it and thereby cause more of the accumulated water to flow through such channel, and less through the other channels, than otherwise would. Such are clearly the rights of these riparian owners, unaffected by any other consideration.

It then becomes necessary to consider how and to what extent, if at all, these rights have been modified by grant or otherwise. In the year 1806 James Bridge, it is admitted, was the owner of substantially the whole of Skowhegan Island together with a tract of land upon the south shore of the southern channel opposite the southeastern portion of the island. On October 29, 1806, he conveyed to William Weston, the predecessor in title of such of these defendants as are now owners upon the middle channel, the northern portion of the island. The description of the land conveyed was as follows: "All my right, title, interest and claim in and to a certain portion or parcel of Skowhegan Island situate in said Canaan, which parcel of said island lies on both sides of the channel or sluice-way in which said Weston's saw mills stand, and is bounded as follows, viz: Southeasterly by a line drawn across said island in a direction south, forty-four degrees west, and north forty-four degrees east, which line shall be distant three rods and no more southerly from the middle of the southeast end of the old Millhouse as the same stood in the month of July last; and bounded on all other sides by the waters of the Kennebec river;

with the buildings thereon and the privileges and appurtenances thereto belonging."

This deed, excluding from consideration for the moment the reservations, made the grantee the owner of the fee of all that portion of the island north of the described line, including the middle channel and the land upon both sides of it. So far, the water rights of the grantee under this deed were those of a riparian owner. They were not acquired by him by a grant of water rights, but by becoming the owner of the soil through which the water flowed. "Water rights acquired by grant, and not by ownership of the soil through which the water flows, depend upon the intention of the parties as expressed in the deed taken in connection with their situation and the subject matter of their transaction at the time of the conveyance." *Gray* v. *Saco Water Power Co.*, 85 Maine, 526. But that is not this case, as we have already seen. The grantee under this deed acquired the ordinary rights of a riparian proprietor. *Ashley* v. *Pease*, 18 Pick. 268; *Tourtellot* v. *Phelps*, 4 Gray, 370; *Hines* v. *Robinson*, 57 Maine, 324; *Whitney* v. *Wheeler Cotton Mills*, 151 Mass. 396.

The Bridge deed was a grant of land on a channel, on which mills were actually situated, the soil described by complete boundaries was the principal subject of the grant, the further words of description identified the grant of the soil and in no sense referred to the water rights. The grant was not of water rights, nor of land with specified and water rights, but of land with such water rights as go with the soil. And by this deed of the north portion of the island, bounded upon all sides, except upon the southeast, by the waters of the Kennebec River, the grantee also acquired the ordinary rights of a riparian owner upon the other two channels.

But this deed was subject to the following conditions and reservations:

(1.) "The said Bridge reserves to himself, his heirs and assigns the right to erect and remove at pleasure, mills and mill-dams upon the southern and eastern side of said island, and at all times to enjoy the free and unobstructed use of the water which shall

run or be turned into the southern channel of Kennebec River at said island."

(2.) "The said Bridge also reserves to himself, his heirs and assigns, the right to erect and maintain a dam or dams upon the channel or sluice-way in which said Weston's mills stand, in order to save the water for the use of the mills upon the said southern channel, whenever the said Weston, his heirs or assigns, shall cease or omit to maintain dams sufficient for that purpose."

(3.) "The said Bridge further reserves to himself, his heirs and assigns, the right to join a dam which may hereafter be erected, to the north part of said island, and the same to repair, rebuild and maintain forever, together with the right to pass and repass over said island with horses and teams and on foot at pleasure."

(4.) "And the said Bridge doth also reserve for himself, his heirs and assigns, the right and privilege, notwithstanding this conveyance, to do everything and anything which may be found convenient or advantageous for the mills and mill privileges in the aforesaid southern channel, and not injurious to the working said Weston's mills or privileges in the channel which crosses said island, and if any damage shall accrue to said Weston's mills or privileges aforesaid by erecting a dam over the northern channel, the said Weston shall have a right to recover the same of those who may erect the same dam." The foregoing reservations are numbered by us for convenience in referring to them.

The complainants allege that by virtue of various mesne conveyances they have become the owners of the mills and privileges on the southern channel, with all the rights and privileges reserved by James Bridge to himself, his heirs and assigns under and by virtue of the deed above referred to; and it is admitted that those of the defendants who are owners upon the middle channel have acquired their ownership by mesne conveyances from Weston, and that their rights and privileges are subject to the reservations contained in this deed.

The complainants' claim is that, by reason of these reservations, Weston and those that now claim under him, " were and are

entitled to the use of so much of the water flowing naturally through said sluice-way (the middle channel) as was necessary to operate the mill or mills upon said sluice-way at the date of said deed, or mills using the same quantity of water and no more; that the use of all the water in excess of said quantity which might flow or be turned into said southern channel, was expressly reserved under the provisions of said deed to said James Bridge and his heirs and assigns forever, and now of right belongs to the plaintiffs."

With respect to the question of the construction of these reservations, it is contended by the defendants, among other things, that the southern channel does not commence at the north end of the island, but only commences below the entrance to the middle channel, and that consequently the language of the reservations does not apply to the water which flows or is turned into that part of the river southwest of the island, but above the inlet of the middle channel. We do not think that this contention as to the place of commencement of the "southern channel," as the expression is used in the deed, can be sustained; but in our view of the proper construction of these reservations, this question is unimportant, and we will assume that the southern channel commences at the head of the island where the river is divided by the island into two branches.

With this assumption, can the plaintiffs' contention be sustained? We think not. By the first reservation Bridge reserved, among other things, the right "at all times to enjoy the free and unobstructed use of the water which shall run or be turned into the southern channel of Kennebec river at said island," for the use unquestionably of the mills and mill-dams which he contemplated erecting upon the southern and eastern side of the island and the land opposite, and which he had a right to erect, irrespective of the reservation, because he owned the land upon both sides of the channel there. In this connection, it is important to notice the fact that Bridge contemplated at the time of the conveyance, as shown by the deed, that a dam would be built across the northern channel from the main land to the northern end of the island, and

he reserved the right, in the third reservation, " to join a dam which may hereafter be erected, to the north part of said island," which would undoubtedly have the effect of turning more water into the channel south of the island than would otherwise flow there.

Independently of the reservation, the original grantee, under the Bridge deed, became entitled to use all the water that nature or the acts of others upon the other channels, caused to flow in his channel. We do not think that this reservation limited that right. Bridge reserved the right to the free and unobstructed flow, that is the natural flow, of the water that flowed in the southern channel in a state of nature. He foresaw that, if a dam should be built across the northern channel from the north end of the island, the right to join which to the island he reserved, additional water would be turned into the southern channel; consequently he reserved the free and unobstructed flow of such additional water, that is, the natural flow thereof, for the use of mills which were to be built by him below upon the southern channel.

We think that the language used in this reservation, "the free and unobstructed use of the water which shall run or be turned," etc., means and is equivalent to "the natural flow of the water that may run or be turned" into that channel. By virtue of this reservation the grantee was deprived of certain rights which, as an upper riparian owner upon the southern channel, he would have had except for the reservation. Those claiming under that deed, as against the owners of the rights and privileges reserved in the Bridge deed, can do nothing upon the southern channel to impair the free and unobstructed flow of water in that channel, although, as we have seen, were it not for the reservation they would be entitled to all of the rights of an upper riparian owner upon that channel, including the right to make such reasonable use of the water therein as the law allows to upper owners upon a stream.

But we think that there is nothing in the reservations, so far considered, that deprives the owners of the middle channel of the use of all the water that naturally flows through that channel or that is turned therein by dams upon the other channels. The

expression "free and unobstructed use of the water which shall run or be turned," etc., can not mean more than the use of all the water that may naturally flow in that channel either in a state of nature or by reason of the dam upon the other channel contemplated at the time of the grant; and there is nothing in the situation or use of these various water powers, at the time of the grant under consideration, to cause us to enlarge the obvious meaning of the language used.

But, in the deed under consideration, Bridge made another important reservation, viz: "The right to erect and maintain a dam or dams upon the channel or sluice-way in which said Weston's mills stand, in order to save the water for the use of the mills upon the said southern channel, whenever the said Weston, his heirs or assigns, shall cease or omit to maintain dams sufficient for that purpose." Taken literally this reservation would give those claiming thereunder the right to prevent the flow of any water whatever through the middle channel, but such a construction is not claimed by the plaintiffs.

We think that the last clause in this reservation clearly shows the extent of what was intended. Bridge appreciated that without such a right, as was herein reserved, the water power on the southern channel might become of little value if the owners of the middle channel should at any time cease to use the water for the production of power and cease to maintain a dam upon this channel. Under these circumstances the water retained by dams, upon the northern and southern channels, would flow to waste through the middle channel greatly to the detriment of these water powers. To prevent such a waste he reserved what might become a very valuable right. But its object and intent was to prevent the waste of water through that channel, not its use. It was to save water for the use of the mills on the southern channel which would otherwise be put to no use on the middle channel.

It did not prevent, and was not intended to prevent, the use by Weston and those claiming under him of the water that Weston was using at that time, or of any water that might be used in its

flow through this channel, so long as the capacity of that channel was not improperly increased.

By virtue of this reservation, the owners of the mill privileges upon the southern channel, who have acquired the rights reserved in the Bridge deed, are entitled at any time to build and maintain upon the middle channel, when the owners do not themselves do so, a dam of sufficient capacity and height to turn back into the southern channel all water not actually used in the middle channel, taking into consideration the height of the dams upon the other channels, and the level of water that would be retained by such dams in conjunction with a sufficient dam upon this channel. But they are not entitled by such a dam to prevent the flow of so much of the water into that channel as would naturally flow there, so long as the same is put to use in the production of power.

We do not think that the fourth reservation affects any of the questions under consideration. What then are the respective rights of these parties, and how have they been affected by the Bridge deed and its reservations? By that deed Weston became the owner of the land described, including the middle channel and the land upon both sides of it; as such owner of the soil he acquired the ordinary rights of a riparian owner upon the middle channel, subject only to the right reserved by the grantor to build and maintain sufficient dams to prevent the waste of water through this channel, when and if the owner should cease to maintain such dams. As such riparian owner he had the right to use any of the water that might naturally flow, or be caused by the acts of others to flow, through this channel. To obtain the most advantageous use of this water for the development of power he could, and those claiming under him can, employ the most improved water wheels and mechanical devices. They may use all the water that flows through the channel in its natural condition, and use it in such a way as to produce the most beneficial results. But they can not by widening, deepening or straightening this channel increase its capacity to the detriment of the riparian owners upon the other channels.

It is unnecessary to further consider the nature and extent of the

right reserved by Bridge to build and maintain dams upon its middle channel in order to prevent the water therein from flowing to waste, because, although one of the prayers of the bill is that the defendants may be restrained from interfering to prevent the erection by the plaintiffs of a dam across this middle channel, as provided in the deed, we do not understand that it is claimed that any water is wasted through this channel, or that the dams of the owners are insufficient to prevent such waste. Nor is it necessary to further consider the riparian rights of these defendants upon the other channels, as such rights are not in controversy here.

Such being the rights of the owners of the middle channel, what relief are these complainants entitled to in this proceeding? They have alleged that the defendants, "by enlarging and deepening said sluice-way, and by using new, larger and additional water wheels, are about to increase greatly the amount of water used therein beyond what they are entitled to, and thereby deprive the plaintiffs of a large portion of the water which they are entitled to have flow through said southern channel."

The allegation of the use by the defendants of larger and additional water wheels does not, as we have seen, entitle the complainants to relief. This the defendants have a right to do. But the allegation that the defendants are contemplating increasing the flow of water through the middle channel, by enlarging and deepening their channel to the injury of the complainants, states a cause of equitable relief. The truth of this allegation is sufficiently shown for the present purposes by the following admission made at the hearing: "It is admitted that what has been done by the defendants and what they propose to do, did have the effect and would have the effect to increase the flow of water in that channel beyond prior conditions." This admission was made in connection with the testimony that was being introduced as to excavations that had been made, and as to the effect of such excavations in causing an increased flow of water.

This the defendants have no right to do as against the owners upon either of the other channels, who would thereby be deprived of the flow through their channel of the water that they are

entitled to. And, as to this ground of relief, it makes no difference whether or not these complainants have succeeded to any of the rights and privileges reserved by Bridge in his deed to Weston, so long as they are owners upon either of the other channels and entitled to the ordinary riparian rights of such owners. This consideration may do away with a large portion of the controversy as to the plaintiffs' title.

Another prayer of the bill is, that the court will ascertain and determine the quantity of water which the defendants are entitled to use and to have flow through this middle channel, and that provision may be made for apportioning the water of the river between the plaintiffs and the defendants, and for regulating their enjoyment thereof according to their respective rights. We have already stated fully our views in regard to the defendants' rights. So far as an apportionment of the water of the river is concerned, this has already been done by nature, and no relief could be granted, other than that already referred to, were it not for the fact, as shown by the admission, that the capacity of the middle channel has already been increased by the defendants so as to increase the flow of water therein beyond prior conditions.

On this account, it will be necessary for the tribunal, which the parties have agreed upon, to determine the amount of such increase in the flow of the water as has already been accomplished, and the method of preventing in the future the use by the owners of the middle channel of this increased amount of water, as well as to settle and determine the details of the terms of a permanent injunction to be granted in accordance with this opinion.

The owners upon each of these channels are entitled to have flow through such channels so much of the accumulated water as will naturally flow therein, in its natural state and condition, and no more.

*Bill sustained and remanded for further*
*hearing and proceedings in accordance*
*with the stipulation of the parties.*